IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-291-D

| | | |
|---|---|---|
| ROBERT J. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRITTANY WOODS HOMEOWNER'S | ) | |
| ASSOCIATION, INC., and TALIS | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

On July 26, 2018, Robert J. Morgan ("Morgan" or "plaintiff"), proceeding pro se and in forma pauperis, filed a complaint against Brittany Woods Homeowner's Association, Inc. ("Brittany Woods HOA") and Talis Management, LLC ("Talis"; collectively "defendants") alleging violations of the Fair Housing Act [D.E. 1, 5, 6]. On September 17, 2018, defendants answered [D.E. 13]. On January 17, 2019, defendants moved for judgment on the pleadings [D.E. 29] and filed a memorandum in support [D.E. 30]. On February 7, 2019, Morgan responded in opposition [D.E. 31]. On February 15, 2019, defendants replied [D.E. 32]. As explained below, the court grants defendants' motion for judgment on the pleadings.

I.

On March 26, 2013, Morgan purchased a townhouse in the Brittany Woods community. See Compl. [D.E. 6] ¶¶ 7, 11.[1] Morgan alleges that Brittany Woods HOA operates and manages Brittany

---

[1] Although Morgan purchased the townhouse on March 26, 2013, Morgan has resided in the townhouse since September 24, 2005. See Compl. [D.E. 6] ¶ 7; cf. Morgan v. Brittany Wood Homeowners Ass'n, Inc., No. 5:12-CV-462-D, 2013 WL 1386022 (E.D.N.C. Apr. 4, 2013) (unpublished).

Woods, and hired Talis to manage the Brittany Woods property. See id. ¶¶ 14, 27.

Morgan alleges that he is a disabled resident. See id. ¶ 11. Morgan's townhouse connects to five other units, and he can use the "restricted common areas shared by the five other properties." Id. ¶ 12; see id. ¶ 11. Morgan belongs to the Brittany Woods HOA and pays approximately $210 per month in homeowner's dues. See id. ¶¶ 8, 10. The deed to Morgan's townhouse also contains various covenants, conditions, and restrictions (the "bylaws"). See id. ¶ 13. The bylaws regulate, among other things, parking, pet ownership, and general resident behavior. See id. ¶¶ 15–25. The bylaws also assign to the "Board" the ability to punish infractions and to supervise the Brittany Woods HOA. See id. ¶¶ 17–18.

Morgan's complaint arises from defendants' "repeated[], consistent[], and persistent[] fail[ure] . . . to enforce the rules and regulations applicable to residents and occupants of Brittany Woods." Id. ¶ 30. Morgan alleges that other residents and their guests have interfered with Morgan's use and enjoyment of his property, including by harassing him, by physically assaulting him, and by violating bylaws concerning pets, parking violations, and unreasonable noise. See id. Morgan also alleges that defendants' failure to enforce the bylaws constitutes discrimination against him because of his disability and that such failure has a disparate impact on disabled residents, including Morgan. See id.

Morgan first discusses parking violations. Morgan alleges that he started having problems with other residents' "unusual and nuisance parking" as early as 2007. Id. ¶ 31. Morgan claims that the parking problems, which included too many cars parked in a lot and cars "coming and going at late hours," spiked in 2009 and 2010. Id. ¶ 32. Morgan alleges that numerous parking violations occurred from 2007 to August 2, 2015. See id. ¶¶ 31–32, 36–37, 50–51, 55, 57–58, 61–63, 65–67, 69–73, 75–76, 78, 80, 82–83, 86–87, 90, 92, 99–100, 102, 104, 107–08, 113, 115, 117, 120–21.

2

Morgan next discusses pet violations. Morgan alleges that his neighbors allow their dogs to run loose, that the dogs frequently bark, and that his neighbors do not clean up their dog waste. See id. ¶¶ 57, 60, 63–64, 70, 74, 76–77, 79–80, 82–84, 86–87, 89–92, 95, 105, 107, 110, 113, 116, 118–20, 123, 125, 131, 142, 145–48. Morgan alleges that he repeatedly reported the violations to defendants and to animal control. E.g., id. ¶¶ 94, 142.

Finally, Morgan discusses issues that he has had with his neighbors, particularly the Leider and Lucas families, from 2010 until September 2015. Morgan alleges that his neighbors or their guests repeatedly vandalized or stole his property. See id. ¶¶ 42–44, 46, 52–54, 67, 84, 115. Morgan also alleges that Lucas attacked, stalked, and threatened him from 2010 to 2013. See id. ¶¶ 38–41, 47–49, 67. Additionally, Morgan alleges that the Leider family repeatedly harassed and attacked him. See id. ¶¶ 63, 85, 95–96, 101, 103, 106–11, 116, 118, 122–27, 132. For example, Morgan alleges that, on September 13, 2015, four members of the Leider family and the family's dog "encircled" Morgan, causing Morgan to fall down a hill and seriously injure his shoulder. See id. ¶¶ 124–30.

In 2015, because defendants allegedly did nothing in response to his frequent complaints, Morgan stopped paying his Brittany Woods HOA dues. See id. ¶ 133. In November 2015, defendants hired a law firm "to collect [Morgan's] outstanding dues and/or to foreclose on [Morgan's] property." Id. ¶ 134. Morgan alleges that defendants demanded $4,534, consisting of $2,840 in Brittany Woods HOA dues and $1,696 in late fees and attorneys' fees. See id. ¶ 135. On January 4, 2016, Morgan alleges that he paid $4,747. See id. ¶ 136. Although Morgan claims that the amount that he paid constituted "full payment of all outstanding balances," on January 6, 2016, defendants foreclosed on Morgan's property. Id. ¶ 137. But see [D.E. 30] 5 ("[Morgan] made full payment on all outstanding balances but did not pay late fees, interest, and attorney fees to avoid

3

foreclosure."). On March 14, 2016, Morgan paid $1,900 in late fees, interest, and attorneys' fees "to avoid or stop the foreclosure." Id. ¶ 138. Defendants nevertheless allegedly claimed that Morgan still owed additional attorneys' fees and therefore prohibited him from using the community pool. See id. ¶¶ 139–40.

On March 6, 2018, defendants sent a notice to Brittany Woods residents "stating that trash and recycling receptacles could not be stored at the front of the unit, but would have to be moved to the rear of the unit or some inconspicuous place." Id. ¶ 143. Morgan alleges that, because of his disabilities, it would be difficult for him to put his trash and recycling bins behind his townhouse. See id. ¶ 144.

II.

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant the motion if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). A court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The same standard applies under Rule 12(c) and Rule 12(b)(6). See Mayfield, 674 F.3d at

4

375; Burbach Broad. Co., 278 F.3d at 405–06. Thus, a motion under Rule 12(c) tests the legal and factual sufficiency of the claim. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences in the "light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015); Burbach Broad. Co. of Del., 278 F.3d at 406. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

III.

On June 21, 2018, Morgan commenced this action [D.E. 1]. Morgan's complaint alleges discrimination based on disability in violation of the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601 et seq. See Compl. [D.E. 6] ¶ 1. Under the FHA, an "aggrieved person may commence a civil action in an appropriate United States district court . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A); see Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 271 (4th Cir. 2013); A Soc'y Without a Name v. Virginia, 655 F.3d 342, 349 (4th Cir. 2011). The court assumes that a "continuing violation theory" could apply to claims of FHA violations. Nat'l Fair Hous. All., Inc. v. HHHunt Corp., 919 F. Supp. 2d 712, 715 (W.D. Va. 2013); see Havens Realty Corp. v. Coleman, 455 U.S. 363, 380–81 (1982). Under a continuing violation theory, defendants' alleged violations may fall within the FHA's statute of limitations if they are "a fixed and continuous practice" and if the "challenged action[s] [are] repeated within the statute of limitations period." Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166–67 (4th Cir. 1991) (quotation omitted); see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–15 (2002); Havens, 455 U.S. at 380–81; A Soc'y Without a Name, 655 F.3d at 348; HHHunt Corp., 919 F. Supp. 2d at 715–16; Nichols v. Carriage House Condos. at Perry Hall Farms, Inc., No. RDB-14-3611, 2015 WL 4393995, at *3 (D. Md. July 15, 2015) (unpublished). If, however, a continuing violation theory does not apply, then the FHA's statute of limitations bars any conduct that occurred before June 21, 2016. See 42 U.S.C. § 3613(a)(1)(A).

Nearly all of the conduct that Morgan complains of occurred between 2007 and September 25, 2015. See Compl. [D.E. 6] ¶¶ 31–132. Morgan does not allege that any conduct occurred from September 25, 2015, to February 14, 2018. After February 14, 2018, Morgan alleges that he called

6

animal control three times, that defendants changed Brittany Woods's trash and recycling receptacle policy, and that a different neighbor has a dog that "runs free and leaves waste on the property and barks." Id. ¶¶ 142–48. Over two years separate Morgan's initial set of allegations that occurred until 2015 from his allegations that occurred in 2018. The two sets of acts are not part of the same continuing violation. See, e.g., Selan v. Kiley, 969 F.2d 560, 567 (7th Cir. 1992) (noting that, because almost two years passed, the "considerable separation weighs heavily against finding a continuing violation"); cf. Pierce v. Office Depot, Inc., No. 0:13-cv-3601-MGL, 2014 WL 6473630, at *6 (D.S.C. Nov. 18, 2014) (unpublished) (noting that, while the Fourth Circuit has not adopted a continuing violation test, "any future continuing violations test was likely to have narrow application"); Talbot v. Mobil Corp., 46 F. Supp. 2d 468, 471 (E.D. Va. 1999). Accordingly, assuming without deciding that defendants' alleged failure to respond to Morgan's disputes with his neighbors is actionable under the FHA, the FHA's statute of limitations bars any claim arising from defendants' conduct before June 21, 2016. Thus, the court grants defendants' motion for judgment on the pleadings concerning such conduct.

As for Morgan's allegations that are not time barred, a "plaintiff can establish a violation under the FHA by proving discrimination in the form of (1) disparate treatment or intentional discrimination, (2) disparate impact of a law, practice, or policy on a covered group, or (3) by demonstrating that the defendant failed to make reasonable accommodations in rules, policies, or practices so as to afford people with disabilities an equal opportunity to live in a dwelling." Human Res. Research & Mgmt. Grp., Inc. v. Cty. of Suffolk, 687 F. Supp. 2d 237, 254 (E.D.N.Y. 2010) (quotations omitted); see Evans v. ForKids, Inc., 306 F. Supp. 3d 827, 834–35 (E.D. Va. 2018). "Title VII and [the FHA] share the same central anti-discrimination objectives" and the "doctrine regarding the definition of discrimination under Title VII and [the FHA] [are] largely

7

interchangeable." Fahnbulleh v. GFZ Realty, Inc., 795 F. Supp. 2d 360, 363 (D. Md. 2011) (quotation omitted); see Smith v. Town of Clarkton, 682 F.2d 1055, 1065 (4th Cir. 1982).

First, Morgan's allegations that defendants failed to act when Morgan's neighbor's dog runs free, that he called animal control three times, and that defendants changed the community's trash policy do not constitute plausible allegations of direct evidence that defendants intentionally discriminated against him. If a plaintiff does not have any direct evidence of illegal discrimination, the plaintiff may proceed under the burden-shifting pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). Even applying the McDonnell Douglas burden-shifting framework, however, Morgan does not plausibly allege a prima facie case of disability discrimination because Morgan fails to allege that defendants took any adverse action against him. Accordingly, Morgan has not plausibly alleged an FHA disability discrimination claim based on intentional discrimination.

As for Morgan's disparate impact FHA claim, Morgan fails to plausibly allege that defendants' conduct had a disparate impact on disabled residents of Brittany Woods. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2523 (2015); see Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 425–26 (4th Cir. 2018). Morgan's complaint does not causally connect defendants' conduct with Morgan's disability. Accordingly, Morgan has not plausibly alleged an FHA disability discrimination claim based on disparate impact.

Finally, Morgan fails to plausibly allege that defendants failed to reasonably accommodate

8

his disability because Morgan does not allege that he requested any accommodations. See Taylor v. Harbour Pointe Homeowners Ass'n, 690 F.3d 44, 49 (2d Cir. 2012). Accordingly, the court grants defendants' motion for judgment on the pleadings concerning Morgan's disability discrimination claim under the FHA.

To the extent that Morgan alleges a section 3617 claim, section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [the FHA]." 42 U.S.C. § 3617; see Hall v. Greystar Mgmt. Servs., L.P., 637 F. App'x 93, 97–98 (4th Cir. 2016) (unpublished); Radcliffe v. Avenel Homeowners Ass'n, No. 7:07-CV-48-F, 2013 WL 556380, at *5 (E.D.N.C. Feb. 12, 2013) (unpublished). To state a claim for retaliation under section 3617, Morgan must plausibly allege that (1) he was engaged in protected activity; (2) defendants were aware of that activity; (3) defendants took adverse action against Morgan; and (4) a causal connection existed between the protected activity and the asserted adverse action. Hall, 637 F. App'x at 98; see, e.g., King v. Rumsfeld, 328 F.3d 145, 150–51 (4th Cir. 2003). Additionally, some courts have held that "violations of section 3617 are based, at least in part, on an intent to discriminate." Davis v. Raleigh Hous. Auth., No. 5:09-CV-522-F, 2011 WL 832330, at *4 (E.D.N.C. Jan. 27, 2011) (unpublished), report and recommendation adopted, 2011 WL 830557 (E.D.N.C. Mar. 3, 2011) (unpublished); see Sofarelli v. Pinellas Cty., 931 F.2d 718, 722–23 (11th Cir. 1991). Even assuming that Morgan engaged in protected activity, Morgan fails to plausibly allege that defendants took adverse action against Morgan. Accordingly, the court grants defendants' motion for judgment on the pleadings concerning Morgan's section 3617 claim.

IV.

In sum, the court GRANTS defendants' motion for judgment on the pleadings [D.E. 29]. The clerk shall close the case.

9

SO ORDERED. This 14 day of May 2019.

／ Dever
JAMES C. DEVER III
United States District Judge